UNITED STATES DISTRICTR COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:
Rebecca Ann Wade,  Case No: 05-88527-TJT
 Chapter 7
    Debtor, Honorable Thomas J. Tucker
_____/
Mark H. Shapiro, Trustee,

    Plaintiff,

vs  Adversary Case: 07-04083-TJT

Merchants Bonding Company and
Quicken Loans, Inc.,

    Defendants.
_____/
Merchants Bonding Company,

    Appellant,

vs  Case No: 07-14848
 Honorable Victoria A. Roberts
Quicken Loans, Inc.,

    Appellee.
_____/

## OPINION AND ORDER

**I.  INTRODUCTION**

Merchants Bonding Company ("MBC") filed a Motion for Summary Judgment in the Bankruptcy Court for the Eastern District of Michigan asking the Bankruptcy Court to find: (1) its Claim of Interest constitutes a lien against 4443 Ravinewood Commerce Township, Michigan 48382 ("the Property"); and (2) the lien has priority over other subsequent interests in the Property.  The Bankruptcy Court: (1) denied MBC's motion;

1

and (2) declared that MBC does not have a lien against the Property. MBC appeals.

The Court **AFFIRMS** the Bankruptcy Court's decision.

## II. BACKGROUND

Rebecca and Donald Wade own Dard, Inc., a corporation that acts as a general contractor for various projects in Michigan, including public projects. Michigan law requires public project contractors to obtain payment and performance bonds. *See* MCLA §129.201. Dard hired MBC to issue bonds for its public projects and signed a "General Application and Agreement of Indemnity" ("Indemnity Agreement") on September 1, 2001. The Wades also signed the Indemnity Agreement in their individual capacities.

Under the Indemnity Agreement, Dard and the Wades agreed to "unconditionally indemnify and keep indemnified [MBC] against any and all liability, loss and expense of whatsoever kind or nature[.]". Indemnity Agreement, ¶2. It also says:

> This Agreement shall, if recorded, constitute a consensual lien upon any and all real estate owned by the [Wades and Dard] at the time of such recording.

Indemnity Agreement, ¶15.

Between October 2004 and March 2006, MBC paid $354,463.39 to bond claimants who performed work or supplied material on three public school projects. It also incurred $18,378.63 in costs, expenses, consulting fees, and attorney fees for a total of $354,463.39 in expenses. Dard reimbursed MBC $111,485.50. Thus, MBC's total net loss is $242,977.89 ($354,463.39 - $111,485.50).

Approximately one month after it started paying the bond claimants, MBC

2

executed a Claim of Interest that was recorded on December 13, 2004.  The Claim of Interest says:

> PLEASE TAKE NOTICE that [MBC] . . . claims an interest in the [P]roperty . . . .  This interest was granted by [the Wades] under a[n] . . . Indemnity Agreement dated September 1, 2001 attached as Exhibit A hereto.

MBC did not attach the Indemnity Agreement.

Subsequently, the Wades sought to obtain a refinancing loan from Defendant Quicken Loans, Inc.  Before Quicken issued the loan, J. Kevin Winters, counsel for the Wades, faxed MBC's counsel, Kevin Kavanaugh, a proposed Subordination Agreement that says Quicken's loan will take priority over MBC's lien.  Winters also sent Kavanaugh a proposed Confidentiality and Non-Disclosure Agreement that says, "[MBC] has filed in the chain of title to [the] [P]roperty a Claim of Interest.  The Lender is requiring that [MBC] subordinate their[sic] Claim of Interest to the Lenders[sic] new mortgage."  MBC declined to subordinate its interest.  Nevertheless, on August 3, 2005, Quicken issued the loan and obtained a $442,150.00 mortgage on the Property.  MBC believes Quicken considered its lien against the Property when determining the loan amount because the difference between the appraised value of the Property ($699,00.00) and the loan amount ($442,150.00) is $256,850.00, an amount similar to its total net loss.

On October 15, 2005, Mrs. Wade filed a Chapter 7 bankruptcy petition.  On January 30, 2007, Trustee Mark H. Shapiro filed a complaint to determine the priority of certain claimed interests in the Property.  Shapiro says: (1) MBC's Claim of Interest had first lien position; and (2) Quicken's loan had third lien position.  The Bankruptcy Court found the mortgage Shapiro believed had second lien position was released by the

3

mortgagee before Mrs. Wade filed for bankruptcy.

The Bankruptcy Court also disagreed with Shapiro's lien positions. It said Quicken's loan has first priority, and MBC does not have an interest in the Property because: (1) the Indemnity Agreement unambiguously states it must record that document to obtain a lien against the Property; (2) MBC did not make a clerical error; and (3) an investigation would only reveal that MBC made a mistake and did not obtain a lien.

On appeal, MBC asks the Court to: (1) reverse the Bankruptcy Court's decision; (2) find its Claim of Interest constitutes a lien against the Property; and (3) remand the case to the Bankruptcy Court for further proceedings.

## III.    STANDARD OF REVIEW

The Court is bound by the Bankruptcy Court's findings of fact unless they are clearly erroneous. *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993) (citing Bankruptcy Rule 8013). The Bankruptcy Court's legal conclusions, however, are reviewed *de novo*. *Id.*

Because MBC appeals the Bankruptcy Court's denial of its summary judgment motion, the Court uses a *de novo* standard of review. *See id.* at 88-89 (a bankruptcy court's decision on a summary judgment motion is purely a question of law that a district court reviews *de novo*).

## IV.    ARGUMENTS AND ANALYSIS

### A.    Clerical Error

MBC cites *Walsh v. Colby*, 153 Mich. 602 (1908) for the proposition that its failure to attach the Indemnity Agreement was a clerical error the Court can correct.

4

In *Walsh*, the circuit court commissioner sold property for the defendant. The deed that was recorded described the property as "All and singular . . . lots numbered consecutively from seventy-nine (79) to ninety-three (93) both inclusive." Its correct description was "All and singular . . . lots numbered consecutively from *seventy-four (74)* to ninety-three (93) both inclusive." (Emphasis added). The individual who purchased the property sought to correct the error. *Walsh*, 153 Mich. at 603-04.

The Michigan Supreme Court held: (1) courts can correct a purely clerical error in its records; (2) it was apparent upon the face of the record that the deed contained a clerical error in the description; (3) the sale was not disturbed; (4) defendant was not injured; and (5) the application to correct the error was to make the record state the actual facts. *Id.* at 604-06.

While the Court has authority under Walsh to correct a clerical error, MBC's failure to attach the Indemnity Agreement is distinguishable from the situation in *Walsh* because: (1) the error is not in a recorded document; and (2) MBC seeks to injure Quicken. It wants an interest in the Property that takes priority over Quicken's interest. MBC's failure to record the Indemnity Agreement is not a clerical error that can be corrected by the Court.

### B. Notice of MBC's Interest in the Property

#### 1. Constructive Notice

MBC says the Claim of Interest provided Quicken with constructive notice that it had a lien against the Property. According to MBC, Quicken was required to contact its attorney (whose contact information was on the Claim of Interest form) to inquire further

5

about the lien.

The Michigan Supreme Court says:

> [w]hen a person has knowledge of . . . facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed.

*Kastle v. Clemons*, 330 Mich. 28, 31 (1951) (citing *Converse v. Blumrich*, 14 Mich. 109 (1866)); *see also Royce v. Duthler*, 209 Mich.App. 682, 689-92 (1995) (same) and *Am. Fed. Sav. & Loan Ass'n v. Orenstein*, 81 Mich.App. 249, 252 (1978) ("[i]t is the duty of a purchaser of real estate to investigate the title of his vendor, and to take notice of any adverse rights or equities of third persons which he has the means of discovering, and as to which he is put on inquiry") (quoting *Schweiss v. Woodruff*, 73 Mich. 473, 477-78 (1889)).

If Quicken had inquired further and obtained the Indemnity Agreement, it would have noticed that MBC can only obtain a lien against the Property if that document is recorded. MBC did not record the Indemnity Agreement. Thus, Quicken is only chargeable with notice that MBC did not do what was necessary to obtain a lien.

### 2. Actual Notice

MBC says the Claim of Interest gave it a lien against the Property, and Quicken had actual notice of the lien because it: (1) located the Claim of Interest during a title search; and (2) believed it created an interest in MBC's favor.

The Court disagrees.

If Quicken believed the Claim of Interest granted MBC a lien against the Property, it was mistaken. In Michigan, courts are required to enforce lawful and

6

unambiguous contracts as written. *See Rory v. Continental Ins. Co.*, 473 Mich. 457, 468 (2005) ("A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written.*"). (Emphasis in original). Because the Indemnity Agreement: (1) is unambiguous; and (2) is not contrary to law or public policy, the Court enforces it as written. It says MBC can only obtain a lien against the Property if the Indemnity Agreement is recorded. Thus, the Claim of Interest did not constitute a valid interest absent the Indemnity Agreement.

C. **Substantial Compliance**

MBC says it "substantially complied" with its requirement to record the Indemnity Agreement because it recorded the Claim of Interest that references the Indemnity Agreement. According to MBC: (1) the purpose of recording the Indemnity Agreement is to put third persons on notice of its lien; and (2) the Claim of Interest satisfied that purpose.

Michigan follows the substantial performance of contract rule:

> A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract. Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages. Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance.

*Gibson v. Group Ins. Co.*, 142 Mich.App. 271, 275 (1985) (citation omitted). However, MBC had to perform a specific act to obtain a lien against the Property – record the Indemnity Agreement. MBC altered its performance requirement by filing a Claim of Interest without the Indemnity Agreement. This essentially changed the terms of

7

performance, and MBC did not "substantially comply" with its requirement. *See id.* at 275-76 ("where the deviations or alternations are such as would essentially change the terms of performance, they will be considered [] a failure of performance.").

In addition, the Claim of Interest did not put third persons on notice of MBC's alleged lien; it only misled them into believing MBC has a lien against the Property when in reality it did not because the Indemnity Agreement was never filed.

### D. Disproportionate Forfeiture

MBC says if the Court does not waive its requirement to record the Indemnity Agreement, it will be deprived of a lien worth $242,977.89 even though Quicken was not prejudiced. MBC says this will result in a "disproportionate forfeiture."

Under the Restatement (Second) of Contracts §229:

> To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.

MBC agreed to record the Indemnity Agreement, and the Wades agreed to grant it an interest in the Property if it did so. The Wades did not agree to grant MBC an interest in the Property if it recorded a Claim of Interest or any other document. Thus, the Court finds the "recording" condition is a material part of the agreed exchange and declines to excuse that condition.

### V. CONCLUSION

The Bankruptcy Court's decision is **AFFIRMED**; MBC's Motion for Summary Judgment is **DENIED**.

**IT IS ORDERED.**

                                              /s/ Victoria A. Roberts  
                                              Victoria A. Roberts  
                                              United States District Judge

**Dated: July 28, 2008**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 28, 2008.**
>
> **s/Linda Vertriest**  
> **Deputy Clerk**